**ORIGINAL**

Law Office of Andre' S. Wooten
Attorney and Counselor at Law

ANDRE' S. WOOTEN, ESQ.
Century Square, Suite 1909
1188 Bishop Street
Honolulu, Hawaii 96813
Telephone No.: (808) 545-4165

Attorney for Plaintiff
MATTHEW HARRELL,

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

FEB 13 2006

at ___ o'clock and ___ min. ___M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MATTHEW HARRELL, | ) | Civil No. 01-00555 MEA-KSC |
| | ) | |
| Plaintiff, | ) | PLAINTIFF MATTHEW HARRELL'S |
| | ) | SUPPLEMENTAL MEMORANDUM IN |
| | ) | SUPPORT OF HIS OBJECTION TO |
| | ) | ABSENCE OF BLACK JURORS |
| vs. | ) | IN JURY PANEL & MOTION |
| | ) | FOR MISTRIAL |
| CITY AND COUNTY OF HONOLULU, | ) | CERTIFICATE OF SERVICE |
| A Municipal corporation, the | ) | |
| Royal Hawaiian Band, Aaron | ) | |
| Mahi, Sr. Director, Robert | ) | |
| Larm, Sanford Masada. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | Judge: Hon. Marvin E. Aspen |
| | ) | Trial Date: January 4, 2006 |

### PLAINTIFF MATTHEW HARRELL'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF HIS OBJECTION TO LACK OF BLACK JURORS IN JURY PANEL & MOTION FOR MISTRIAL

COMES NOW, the Plaintiff MATTHEW HARRELL, by and through his attorney of record ANDRE' S. WOOTEN, who hereby submit this Supplemental Memorandum renewing the original oral and written objection to the selection and composition of the panel culled for his trial, which had a total absence of African-American jurors in the

pool, lodged by the Plaintiff at the commencement of the trial before the reception of any evidence.

This Motion is filed pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure.

As we previously stated in court January 4, 2006, while we were not pleased and expressed our displeasure in the status conference before jury selection, after we noted that none of the people in the pool noted on their jury cards indicated that they were black people, after reviewing the jury card before the trial.    We also noted that some cards were not marked in that area at all, and at least one was marked "human". So, it seemed prudent to wait and see, because black people are human.

However, upon actually viewing the jury panel and engaging in voir dire, it did become clear that this panel was devoid of any African-Americans, even as potential jurors on Plaintiff's jury.    Which contravenes and violates Mr. Harrell, the African-American Plaintiff's, Constitutional Right to have his case tried by a jury of his peers, which, of course includes African-Americans.    The City's attorneys do not even have to bump a black juror from the final jury, if there are none included in the 50 person pool of available jurors.

1.

It is not as though African-Americans do not, or have for a long time resided in Hawaii, Indeed the original members of the Royal Hawaiian Band started by King Kamehameha III in 1835 were black musicians.    And at 3% of the Hawaii population and 6% of the Hawaii prison population is African-American, one would therefore

expect 2 -3 African-Americans to be in the average jury pool of 100. Assuming the pool of jurors is drawn at random from the lists of licenced drivers and registered voters.

Plaintiff did not receive a fair opportunity at his Constitutional right to a trial by a jury of his peers with the selection or omission of a jury pool and trial jury devoid of black voters or drivers, assuming those lists are the ones from which Hawaii District Court jurors are drawn. The absence of any black jurors in Plaintiff entire jury panel denied him his right to a trial by a true jury of his peers. And as Constitutional rights have dimension and were written into the Constitution for a good reason, Plaintiff must lodge his objection to the jury pool from which his panel of 8, reduced to 7 people, was selected.

In BATSON v. KENTUCKY, 476 U.S. 79 (1986) the U.S. Supreme Court ruled.

> Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure. "The very idea of a jury is a body . . . composed of the peers or equals of the person whose rights it is selected or summoned to determine; that is, of his neighbors, fellows, associates, persons having the same legal status in society as that which he holds." Strauder, supra, at 308; see Carter v. Jury Comm'n of Greene County, 396 U.S. 320, 330 (1970).
> The petit jury has occupied a central position in our system of justice by safeguarding a person accused of crime against the arbitrary exercise of power by prosecutor or judge. Duncan v. Louisiana, 391 U.S. 145, 156 (1968).[fn8] Those on the venire must be "indifferently chosen,"[fn9] to secure the defendant's right under the Fourteenth Amendment to "protection of life and liberty against race or color prejudice." Strauder, supra, at 309.
> A defendant has no right to a petit jury composed in whole or in part of persons of his own race. Strauder v. West Virginia, 100 U.S. 303, 305. <u>However, the Equal Protection Clause guarantees the defendant that the State will not exclude members of his race from the jury</u>

<u>venire on account of race, or on the false assumption that members of his race as a group are not qualified to serve as jurors.</u>

By denying a person participation in jury service on account of his race, the State also unconstitutionally discriminates against the excluded juror. Moreover, selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice.

**<u>The same equal protection principles as are applied to determine whether there is discrimination in selecting the venire also govern the State's use of peremptory challenges to strike individual jurors from the petit jury.</u>**

The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice. See Ballard v. United States, 329 U.S. 187, 195 (1946); McCray v. New York, 461 U.S. 961, 968 (1983) (MARSHALL, J., dissenting from denial of certiorari). Discrimination within the Page 88 judicial system is most pernicious because it is "a stimulant to that race prejudice which is an impediment to securing to [black citizens] that equal justice which the law aims to secure to all others." Strauder, 100 U.S., at 308.

In Strauder, the Court invalidated a state statute that provided that only white men could serve as jurors. Id., at 305. We can be confident that no State now has such a law. The Constitution requires, however, that we look beyond the face of the statute defining juror qualifications and also consider challenged selection practices to afford "protection against action of the State through its administrative officers in effecting the prohibited discrimination." Norris v. Alabama, supra, at 589; see Hernandez v. Texas, 347 U.S. 475, 478-479 (1954); Ex parte Virginia, supra, at 346-347.

**<u>Thus, the Court has found a denial of equal protection where the procedures implementing a neutral statute operated to exclude persons from the venire on racial grounds,[fn10] and has made clear that the Constitution prohibits all forms of purposeful racial discrimination in selection of jurors.[fn1</u>**

While decisions of this Court have been concerned largely with discrimination during selection of the venire, the principles announced there also forbid discrimination on account of race in selection of the petit jury. Since the Fourteenth Amendment protects an accused throughout the proceedings bringing him to justice, Hill v. Texas, 316 U.S. 400, 406 (1942), **<u>the State may not draw up its jury lists pursuant to neutral</u>**

**procedures but then resort to discrimination at "other stages in the selection process,"** Avery v. Georgia, 345 U.S. 559, 562 (1953); see McCray v. New York, supra, at 965, 968

    The principles announced in Strauder never have been questioned in any subsequent decision of this Court.   Page 90
    Rather, the Court has been called upon repeatedly to review the application of those principles to particular facts.[fn13] A recurring question in these cases, as in any case alleging a violation of the Equal Protection Clause, was whether the defendant had met his burden of proving purposeful discrimination on the part of the State.   Whitus v. Georgia, 385 U.S. 545, 550 (1967); Hernandez v. Texas, supra, at 478-481; Akins v. Texas, 325 U.S., at 403-404; Martin v. Texas, 200 U.S. 316 (1906).   That question also was at the heart of the portion of Swain v. Alabama we reexamine today.[fn14]

2.

Here, in the Hawaii District, the jury panel lists appear to be neutral, as created objectively from the licensed driver's list and voters list.   However, such a practice ignores the citizens who are military in Hawaii, which comprises another 120,000 people or ten percent of the real population.   And one half of this population is African-American.   The inclusion of these 50,000 black military men and women, would more than double the "official" census for African-Americans in Hawaii, around 30,000 or 2%.   While black men are 6% of the prison population.   A figure a dare say more accurate than the census, for obvious reasons.

The exclusion of the military adults from juries in Hawaii leads to a situation, where African-American citizens who, have legal issues in court in Hawaii are systematically denied juries which accurately reflect the adult African-American citizen population.   The military drivers and voters, who reside in Hawaii should also be included in jury selection.   Failure to do so prevents juries in Hawaii from being those

of their peers because a full 10% of the population is ignored.   And this omission results in less than half of the black residents of Hawaii being considered even eligible tp be called for jury duty.

That systematic exclusion of military and over half the black working adult population in Hawaii being the case, the District care should take extra care to ensure that at least some African-American citizens are selected for the jury panels of African-American Plaintiff's especially in civil rights cases.

As the jurors attitude and history with regard to civil rights, equal opportunity and integration of the public work force in Hawaii, have a lot to do with their economic status, history, experience and ethnic back ground.   The exclusion of African-Americans who have been the intended historical systematic victims of American job discrimination, is therefore patently unfair and improper in this employment discrimination case.

The Ninth Circuit reasoning in <u>COLEMAN v. McCORMICK</u>, 874 F.2d 1280 (9th Cir. 1989) is instructive on this issue.

> [10] Coleman challenges his convictions on the ground that his sixth amendment right to an impartial jury was violated. He contends
> Page 1283 his jury panel was selected in an impermissibly discretionary manner.[fn3]
>
> [11] Coleman's first jury panel was dismissed by the court three days before trial in response to a challenge by Coleman.   A second panel was drawn. Each name on the jury list was assigned a number, the numbers were placed in a box, and 200 were drawn.   The court then directed the court clerk to obtain a panel of sixty jurors by telephoning persons whose names were drawn from the box to see if they would be available to serve on a jury within the next three days.   Sixty-one of the prospective jurors

indicated they would be available and sixty appeared for Coleman's trial. Coleman I, 177 Mont. 1, 579 P.2d at 746-47. It was from this panel that Coleman's trial jury was chosen.

[15] **Trial by a jury of one's peers contemplates that an impartial jury will be drawn from a fair cross-section of the community.** Thiel v. Southern Pacific Co., 328 U.S. 217, 220, 66 S.Ct. 984, 985, 90 L.Ed. 1181 (1946). The sixth amendment does not guarantee a randomly selected jury, United States v. Wellington, 754 F.2d 1457, 1468 (9th Cir.), cert. denied sub nom. Utz v. United States, 474 U.S. 1032, 106 S.Ct. 592, 593, 88 L.Ed.2d 573 (1985), nor does it require that the jury contain representatives from every group in the community. Lockhart v. McCree, 476 U.S. 162, 173-75, 106 S.Ct. 1758, 1759, 90 L.Ed. Page 1284 2d 137 (1986); Thiel, 328 U.S. at 220, 66 S.Ct. at 985. A fair cross-section challenge to the constitutionality of the jury venire requires a showing:

   (1) [T]hat the group alleged to be excluded is a `distinctive' group in the community;

   (2) [T]hat the representation of this group in venires from which injuries are selected is not fair and reasonable in relation to the number of such persons in the community; and

   (3) [T]hat this under representation is due to systematic exclusion of the group in the jury-selection process. United States v. Miller, 771 F.2d 1219, 1228 (9th Cir. 1985) (quoting Duren v. Missouri, 439 U.S. 357, 364, 99 S. Ct. 664,668, 58 L.Ed.2d 579 (1979). COLEMAN v. McCORMICK, 874 F.2d 1280

The black military adults in Hawaii fit all three categories mentioned. The black military adults are not only a "distinctive group in the community", it is the group to which Plaintiff belonged when he applied for this City job before he retired from the Army. Mr. Harrell however, like many other military members purchased a house in Hawaii and it is his primary residence.

The exclusion of 10% of the community and certainly the 5% of the community, which is African-American and employed in the military is not fair. Given the fact of the

permanent military presence in Hawaii, even though many of the personnel rotate. But many of those return.

The military and black military residents are excluded systematically by a policy which excludes Hawaii residents who are in the military, or who live here but have driver's licences and or are registered from the home states of origin.

> [17] Coleman contends that as a result of the jury selection process, persons from the lower socioeconomic areas of Billings were excluded from his panel of prospective jurors. He has not alleged any facts, however, from which it could be concluded that persons from the lower socioeconomic areas of Billings formed a distinctive group in the community, or that if such a group existed it consisted of a sufficient number of persons so that its systematic exclusion from jury panels would support a fair cross-section challenge under the sixth amendment. Duren, 439 U.S. at 364, 99 S.Ct. at 668; see Taylor v. Louisiana, 419 U.S. 522, 531, 95 S.Ct. 692, 698, 42 L.Ed.2d 690 (1975); United States v. Kleifgen, 557 F.2d 1293 (9th Cir. 1977); United States v. Potter, 552 F.2d 901, 904-05 (9th Cir. 1977). Having failed to demonstrate the existence of a "distinctive" group, Coleman's claims that such a group was under represented in jury venires or was systematically excluded in the jury selection process also fail.    WILLIAMS v. CITY OF INDIANAPOLIS, 567 N.E.2d 1197 (Ind. App. 1991) COLEMAN v. McCORMICK, 874 F.2d 1280

Similarly, the Ninth Circuit Court of Appeals reasoning in SHAW v. HAHN, 56 F.3d 1128 (9th Cir. 1995) is also illuminating on this issue.

> [7] In Batson's progeny, the Supreme Court has made clear that the prohibition against racially discriminatory peremptory challenges is bottomed primarily in the equal protection rights of the potential juror, not the rights of the litigant.   See generally Barbara D. Underwood, Ending Pace Discrimination in Jury Selection: Whose Right is it, Anyway?, 92 Col.L.Rev. 725, 742-50 (1992) (arguing that the primary doctrinal foundation for Batson and its progeny is that raced-based jury selection violates the equal protection rights of excluded venire persons).

For example, in Powers v. Ohio, 499 U.S. 400, 404-16, 111 S. Ct. 1364, 1366-74, 113 L.Ed.2d 411 (1991), the Court held that a criminal defendant could object to an allegedly discriminatory use of a peremptory challenge, even if the defendant did not share the challenged juror's race.

In response to the state's argument that a white defendant could not object to the exclusion of black venire persons, the Court explained that its decision in Batson "was designed to serve multiple ends, only one of which was to protect individual defendants from discrimination in the selection of jurors." Id. at 406, 111 S. Ct. at 1368 (quotations omitted). Emphasizing the importance of an individual's right not to be excluded from a jury on account of race, id. at 406-09, 111 S. Ct. at 1368-70, the Court stated explicitly that an excluded venire person has a legal right to bring suit on his or her own behalf, but recognized that the "daunting" barriers to such a suit hindered the venire person's ability to assert his or her own constitutional rights.[fn2] Id. at 414, 111 S. Ct. at 1372.

Applying the three-prong test to determine third party standing, see Singleton v. Wulff, 428 U.S. 106, 112-16, 96 S. Ct. 2868, 2873-75, 49 L.Ed.2d 826 (1976),[fn3] the Court concluded that a criminal defendant, regardless of his or her race, has standing to raise the excluded venire person's equal protection rights and object to a race-based peremptory challenge. Powers, 499 U.S. at 410-416, 111 S. Ct. at 1370-74.

[8] Two months later, in <u>Edmonson v. Leesville Concrete Co.</u>, 500 U.S. 614, 111 S.Ct. Page 1131 2077, 114 L.Ed.2d 660 (1991), the Court held that the prohibition against racially discriminatory peremptory challenges applied to jury selection in civil cases as well as criminal cases. Id. at 618-31, 111 S.Ct. at 2081-89.

In doing so, the Court echoed the logic of Powers, holding that private litigants in civil trials have third-party standing to raise the equal protection claims of venire person excluded on account of race. Id. at 628-31, 111 S.Ct. at 2087-89 ("Our conclusion in Powers that persons excluded from jury service will be unable to protect their own rights applies with equal force in a civil trial.").

[9] Thus, it is axiomatic that Shaw has a right not to be excluded from a jury solely on the basis of her race and that she can bring a claim alleging that a civil litigant has violated that right. See, e.g., Carter v. Jury Comm'n of Greene County, 396 U.S. 320, 329-30, 90 S.Ct. 518, 523, 24 L.Ed.2d 549 (1970) (individuals excluded from jury service on the basis of their race may bring suit on their own behalf). Indeed, the defendants do not seriously dispute that the right violated by raced-based jury selection

is the excluded venire person's.

In HOLLAND v. ILLINOIS, 493 U.S. 474 (1990) the U. S. Supreme Court stated:

> The threshold question is whether petitioner, who is white, has standing to raise a Sixth Amendment challenge to the exclusion of blacks from his jury. We hold that he does.
>
> In Batson v. Kentucky, 476 U.S. 79, 96 (1986), we said that to establish a prima facie Equal Protection Clause violation in the discriminatory exclusion of petit jurors, the defendant "must show that he is a member of a cognizable racial Page 477 group . . . and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race."
> Many of the concerns expressed in Batson, a case where a black defendant objected to the exclusion of black jurors, support as well an equal protection claim by a defendant whose race or ethnicity is different from the dismissed juror's.   To bar the claim whenever the defendant's race is not the same as the juror's would be to concede that racial exclusion of citizens from the duty, and honor, of jury service will Page 489 be tolerated, or even condoned.
> We cannot permit even the inference that this principle will be accepted, for it is inconsistent with the equal participation in civic life that the Fourteenth Amendment guarantees. I see no obvious reason to conclude that a defendant's race should deprive him of standing in his own trial to vindicate his own jurors' right to sit.
> As JUSTICE MARSHALL states, Batson is based in large part on the right to be tried by a jury whose members are selected by nondiscriminatory criteria and on the need to preserve public confidence in the jury system. These are not values shared only by those of a particular color; they are important to all criminal defendants.

The jury selection procedure in Hawaii excludes residents who are in the military.   And this causes more than half of the working black residents of Hawaii to be systematically excluded from participation in Federal juries, and leaves the other black residents systematically under represented in juries of their peers in Hawaii.   This system violated Plaintiff Matthew Harrell's 6th Amendment right to a jury of his peers and lead to an unfair trial of his employment discrimination case.   The systematic

exclusion of other black military residents of Hawaii should no longer be countenanced.

Judge Ezra has recently ruled, just last week, that the City of Honolulu's residency requirement before persons can even apply for City of Honolulu jobs is unconstitutional. So is the method of excluding over 50% of the adult African-American population from juries in Hawaii.

*42 U.S.C. §§ 1981.* Equal rights under the law

(a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment The rights protected by this section are protected against impairment by non-governmental discrimination and impairment under color of State law.

The military and black military residents are excluded systematically by a policy which excludes Hawaii residents who are in the military, or who live here but have driver's licences and or are registered from the home states of origin. The District Court should have ensured that at least a few African-American citizens were included in the jury pool for this employment discrimination case.

Consequently, Plaintiff requests a mistrial, due to the violation of his 14th

Amendment Rights to Equal Protection of the law, due to the exclusion of African-American jurors from the entire pool of his jury.

Dated: Honolulu, Hawaii, February 12, 2006.

_____
Andre' S. Wooten
Attorney for Plaintiff Matthew Harrell

ANDRE S. WOOTEN    3887
Attorney at Law
Century Square, Suite 1909
1188 Bishop Street
Honolulu, HI  96813
Phone:  (808) 545-4165

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the Foregoing was duly served upon the following on __February 14, 2006__ by:

( ) Delivering same, postage prepaid, addressed to:

(X) Delivering to:

TO: The Office of the Corporation Counsel
David Arakawa, Esq.
Moana Yost, Esq. Deputy
Derrick Miyashiro, Esq. Deputy
Honolulu Hale
530 South King Street
Honolulu, Hawaii  96813

Attorneys for Defendants

_____
ANDRE' S. WOOTEN