**ORIGINAL**

Law Office of Andre' S. Wooten
Attorney and Counselor at Law

ANDRE' S. WOOTEN, ESQ.
Century Square, Suite 1909
1188 Bishop Street
Honolulu, Hawaii 96813
Telephone No.: (808) 545-4165

Attorney for Plaintiff
MATTHEW HARRELL,

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

FEB 13 2006

at 11 o'clock and 53 min. P M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MATTHEW HARRELL, | ) | Civil No. 01-00555 MEA-KSC |
| | ) | |
| Plaintiff, | ) | PLAINTIFF MATTHEW HARRELL'S |
| | ) | MOTION FOR JUDGEMENT AS A |
| | ) | MATTER OF LAW or In The |
| vs. | ) | ALTERNATIVE, MOTION FOR NEW |
| | ) | TRIAL |
| CITY AND COUNTY OF HONOLULU, | ) | CERTIFICATE OF SERVICE |
| A Municipal corporation, the | ) | |
| Royal Hawaiian Band, Aaron | ) | |
| Mahi, Sr. Director, Robert | ) | Hearing Date: April 13, 2006 |
| Larm, Sanford Masada. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | Judge: Hon. Marvin E. Aspen |
| | ) | Trial Date: January 4, 2006 |

## PLAINTIFF MATTHEW HARRELL'S MOTION FOR JUDGEMENT AS A MATTER OF LAW or In The ALTERNATIVE, MOTION FOR NEW TRIAL

COMES NOW, the Plaintiff MATTHEW HARRELL, by and through his attorney of record ANDRE' S. WOOTEN, who hereby submit this Motion for Judgment For the Plaintiff As a Matter of Law or In the Alternative for a New Trial pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure.

1.

Rule 50. Judgment as a Matter of Law in Jury Trials; Alternative Motion for New Trial; Conditional Rulings
   (a) Judgment as a Matter of Law.

   (1) If during a trial by jury a party has been fully heard on an issue and **there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue,** the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

   (2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.
   (b) Renewing Motion for Judgment After Trial; Alternative Motion for New Trial; <u>ASW v. OREGON</u>, 424 F.3d 970 (9th Cir. 2005) <u>E.E.O.C. v. PACIFIC MARITIME ASSOC.</u>, 351 F.3d 1270 (9th Cir. 2003)

   **Ninth Circuit Instruction 11.1 entitled VIOLATIONS OF FEDERAL CIVIL RIGHTS—ELEMENTS AND BURDEN OF PROOF** reads:

   On the plaintiff's [*describe claim*] claim, the plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

   1.   the acts or omissions of the defendant were intentional;

   2.   the defendant acted under color of law; and

   3.   the acts or omissions of the defendant were the cause of the deprivation of the plaintiff's rights protected by the Constitution or laws of the United States.

   If you find that each of the elements on which the plaintiff has the burden of proof has been proved, your verdict should be for the plaintiff. If, on the other hand, the plaintiff has failed to prove any of these elements, your verdict should be for the defendant.

No reasonable jury which objectively evaluated all of the evidence of this trial could conclude that Plaintiff Matthew Harrell had not been wrongfully denied employment with the City and County of Honolulu's Royal Hawaiian Band. And that he was the victim of retaliation after he filed his civil rights complaint.

2.

The Evidence presented at the trial has shown that black musicians were rated good enough to start the Royal Hawaiian Band by King Kamehemeha III, when he created it back in the 1830's. Testimony of Miles Jackson. But Aaron Mahi never hired any black musicians or even any other Hawaiian musicians during the whole 22 years he ran the City of Honolulu Municipal band. His employment practices clearly show a "color bar", and evidence of a classical colonial employment pattern of only people with light skin. No black musicians have even been employed by the City of Honolulu Royal Hawaiian band within the memory of anyone living. These despite an abundance of black musicians of every stripe in Hawaii for many many years.

We questioned Mr. Mahi about his "objective" and collaborative rating of Matt Harrell's and Christopher Ventura's "Knowledge and Experience." category. His conspiracy with Mr. Larm and Mr. Masada to award Chris Ventura the top score of 5 for 8 years of the same type of military band job that Matt had been doing for 20 years, and supervised Ventura in doing, as well as the other similar types of band playing experience they both had including UH and part-time with the Honolulu Symphony, was totally subjective #1 and clear evidence of irrational and discriminatory bias and an illegal conspiracy #2..

Mr. Larm tried to dance around what a "50=Satisfactory" score means on the rating sheet. But the rating sheets in evidence speaks for themselves and says that "50=Satisfactory". And Mr. Harrell was rated at least Satisfactory and better on all rating sheets, proving that he was qualified for the job.

The Ninth Circuit Court of Appeals has ruled in <u>Bonilla v. Oakland Scavenger Co.</u>, 697 F 2d 1297 (1982) that

> "Nepotistic concerns could not supersede mandate of employment discrimination laws...The company's practice of limiting share ownership to persons who were of Italian ancestry and were either members of family or close friends of current shareholders and practice of assigning better jobs with higher pay and more guaranteed hours to shareholder employees was prim facie violation of Title VII, Civil Rights Act of 1974, $ 701 et seq. as amended 42 U.S.C.A. 2000e et seq.

In this case, a racial bias and series of events of unfair treatment bias was proven. The Defendant conspired to grade Matt Harrell lower on certain important questions, such as experience and knowledge, when objectively, it is clear that his 21 years of professional experience are greater than the next highest candidates 8 years. Yet the committee AGREED to All give the local guy with less experience a higher grade than the black guy who actually has more years of professional player experience.

Sanford Masada did testify that Matt Harrell played "A Good Overall Performance" It was "OK". And he rated Mr. Harrell's performance as better than merely Satisfactory, according to the 70's and 50's he gave him. He also said that after he did that, Mr. Mahi made the final selection of the musician all by himself.

**Indeed, however, the evidence shows that all of the Raters scored the Plaintiff as Good or better than Satisfactory.**

And Sanford Masada did also say that to him in his 9 or 10 prior audition ratings that 50 was Satisfactory in performance, just like it says on the rating sheet. If the Defendants want to rate somebody unsatisfactory I know they have certainly done it, as Robert Larm finally conceded.

So Aaron Mahi' rejection of this black candidate was based upon an arbitrarily and totally "Subjective evaluation", which at certain key objective points, reveals itself to be biased. And certainly a contrivance, which explains in large part why there are no longer any black musicians in the City band, even though most would concede that African-American musicians can play all types of music well, even Hawaiian music. Although the City band music is frequently the same type of marches that the Army band Mr. Harrell was a member of for 21 years performed.

I mean to conspire to agree to rate Chris Ventura's 8 years of full time military band experience higher than Matt Harrell's 20 years of clearly superior experience shows a clear. The Defendants can't even argue they rated them even for similar primarily military experience. A semblance of fairness.

No, on a clear factual issue, which gives some measure of objective evaluation of a persons professional working career in music Aaron Mahi and his selected deputies and conspirators proved themselves to be totally subjective rather than objective, indicating a totally lack of realistic objectivity and their irrational and unreasonable bias against the more experienced Plaintiff. Clearly in terms of actual

working years.

Maui Symphony Experience was irrationally favored over all else. Both mem had played a couple of times with the Honolulu Symphony, clearly the more accomplished orchestra than the very part time Maui Symphony.

That bias carried out in the actual music playing evaluations and scoring as well. These people went into this competition with preconceived notions of who they wanted and who would get the job.

### 3 DISPARATE TREATMENT

What we have in this case, which the Supreme Court in <u>McDonnell Douglas Corp. vs. Green</u>, supra @804 stated was "Especially relevant to proving `pre-textual' excuse for discriminatory action is "a showing that white [or as in this case non-black] employees involved in acts against petitioner of comparable seriousness to the "stall-in" were nevertheless retained or rehired."

Here both Chris Ventura and Ryan Howe, told the committee they would take the job if offered at the interview, but then declined the job, when it was actually offered to them. Then, they not Plaintiff are hired for part-time work thereafter, when Plaintiff is excluded.

Moreover, the very process of the audition was proven to be fundamentally unfair. The Defendants refused to give Matt Harrell access to the sheet music to practice before the "Sight Reading" challenge, like they had given Chris Ventura. Ventura was not only allowed to take the music home, but was employed frequently to practice with the band before the audition. An opportunity denied the Plaintiff, who

still played very well.    So sure Ventura came out ahead, because he had access to the sheet music to practice and did so.

As the Supreme Court stated in Griggs vs. Duke Power Co. 401 US supra @ 426, 91 S Ct at 851, 28 L Ed 2d @ 161 and quoted in Rowe vs. General Motors Corp. 457 F 2d 345 @ 355: "It is clearly not enough under Title VII that the procedures utilized by employers are fair in form.   These procedures must in fact be fair in operation.  Likewise, the intent of employers who utilize such discriminatory procedures is not controlling since "Congress directed the thrust of the Act to the **consequences** of employment practices, not simply the motivation." Griggs vs. Duke Power Co. 401 US @ 432.

> "It is therefore clear that employment practices which operate to discriminate against people because of their race, color, religion, sex or national origin, violate Title VII, even though the practices are fair on their face and even though the employer had no subjective intention to discriminate."

> "Title VII of the civil Rights Act prohibits **all** forms of discrimination in **all** aspects of employment and the degree of discrimination practiced by an employer is unimportant under the Act. " Rowe v. General Motors Corp. 457 F.2d 348.

The Defendants claim that Matt Harrell, was more nervous than the other candidates.   So they did not hire him.   This is a clear pre-text.   Robert Larm admitted all performers have PERFORMANCE ANXIETY.   As did Paul Barrett. The Defendants are saying this 20 Army band vet and part-time City band and Honolulu Symphony Orchestra player was more nervous than the average musician.

But think about it Ryan Howe said he was just doing the audition for the

experience of an audition. He had no intention of actually taking the job and quitting school.

And Chris Ventura had Sanford Masada his long time Hawaii National Guard Band Business Acquaintance of 10 years and Aaron Mahi rigging the vote in his favor on the 3 panel committee, for a job that paid $1100 a month less than the job he was working at the time. Plus, he played with the City band a lot and had copies of all of its HARD SONGS FOR BASSOON TO PRACTICE. So what did he have to be nervous about? Nothing.

And here comes Matt Harrell, just getting out of the U. S. Army after 21 years and worrying about how he is going to pay the mortgage on the town house in Mililani he bought in 1997, after he gets out of the Army. He of all 3 applicants was the only one who really wanted the job.

The committee was swayed by the lies of Chris Ventura that he would take a $1100 a month pay cut and take this job and boosted his scores upward as a result.

The recently decided DOE v. KAMEHAMEHA SCH./BERNICE PAUAHI BISHOP, 416 F.3d 1025 (9th Cir. 2005) case lays out the burden of proof in an employment discrimination case, and also establishes why no rational jury could conclude that Plaintiff had not been discriminated against in this case in the following language.

> "Once the plaintiff establishes a prima facie case, an inference of discrimination arises. In order to rebut this inference, the employer must present evidence that the plaintiff was rejected, or the other applicant was chosen, for a legitimate nondiscriminatory reason. . . . At this point, as our prior cases make clear, petitioner retains the final burden of

persuading the jury of intentional discrimination. Although petitioner retains the ultimate burden of persuasion, our cases make clear that Page 1036 she must also have the opportunity to demonstrate that respondent's proffered reasons for its decision were not its true reasons. Id. at 186-87, 109 S.Ct. 2363 (internal quotation marks, citations and footnote omitted) (emphasis added).

We find this treatment particularly instructive because the Court's discussion appears to approve the use of, in the arena of § 1981 employment discrimination claims, not only the McDonnell Douglas order of proof, but also the nature of the proof that a private defendant in a Title VII action is required to adduce. See also Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 617 n.1, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999) (Thomas, J.,dissenting) ("This Court has applied the `framework' developed in Title VII cases to claims brought under [§ 1981].") (citing Patterson, 491 U.S. at 186, 109 S.Ct. 2363); Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000) (analogizing a § 1981 claim to a Title VII claim); Brown v. Am. Honda Motor Co., 939 F.2d 946, 949 (11th Cir. 1991)

("[T]he test for intentional discrimination in suits under § 1981 is the same as the formulation used in Title VII discriminatory treatment causes. . . . [T]he defendant must come forward with evidence demonstrating legitimate, nondiscriminatory reasons for its conduct."). While the Court could have suggested that a § 1981 defendant must demonstrate that race-based action is narrowly tailored to further a compelling governmental interest, see, e.g., Adarand, 515 U.S. at 227, 115 S.Ct. 2097, <u>it stated instead that the employer must show merely "that the plaintiff was rejected, or the other applicant was chosen, for a legitimate nondiscriminatory reason</u>," Patterson, 491 U.S. at 187, 109 S.Ct. 2363 (emphasis added). <u>DOE v. KAMEHAMEHA SCH./BERNICE PAUAHI BISHOP</u>, 416 F.3d 1025 (9th Cir. 2005)

In this case, we have presently overwhelming evidence that Plaintiff was rejected for a false and pre-textual reason. Number one the Defendants did not even fill the position, even though, the audio tape evidence, the Defendant's own rating sheets scores and the testimony of Paul Barrett the best bassoonist in the state, who actually held the Royal Hawaiian band job, testified and proved that Plaintiff Matt Harrell was a competent experienced and practiced bassoonist. One who, with

some practice, of the type afforded Chris Ventura and that he experienced in the Army would result in very fine and competent bassoon playing.

Paul Barrett is the dean of professional Bassoonist in the State of Hawaii and has been since he became principal Bassoonist for the Honolulu Symphony in 1977.

He testified, after the audio tapes of all 3 applicants were played in open court. And he testified as an expert, the only expert to testify in the case, that all 3 of the applicants were qualified for the City band bassoon job. They all played well, but none were Fantastic, and all were in the same ball park of ability.

Moreover, Mr. Barrett and the audio tapes themselves proved that Matt Harrell's audition performance was good enough for him to be hired and his play was not substantially worse or poorer than that of Ventura's of Howe's.

And under these circumstances, when the other 2 non-black musicians turned down the job, the position should have been offered to the 3rd applicant. Matt Harrell. And all the excuses for not hiring the black Plaintiff put forth by the Defendants were mere pre-texts.

From the earliest days African-Americans and Hawaiians have lived together in peace and familial relationships going back to the later 1700's there were black sailors with Captain Cook, who stayed behind after the British left and were armorers for Kamehameha I.

And from the earliest days dance and music have been a common point of interchange between Hawaiians and African-Americans, Afro-Hawaiians and even Jawaiians. Young Hawaiian musicians do indeed play Reggae today.

Africans were certainly playing flutes, horns, lyres, harps, guitars, drums, trumpets, cymbals and other instruments in Africa thousands of years ago, and in Europe for Centuries before King Kamehameha III hired America Shattuck, David Curtis in the 1830's and George Washington Hyatt, Charles Johnson in 1845 and other black musicians to start THE ORIGINAL REAL ROYAL HAWAIIAN BANDS.

Indeed Afro-Hawaiian Kumu Hulas like Thadeus Stephens of Waianae have lead hula heaus in the Merry Monarch Hula Festival in Hilo held every April and come away with victory calabashes and drums in the recent past.   Indeed the Merry Monarch Hula Festival was brought into being in the early 1960's during the Big Island Government lead by Mayor Hellene Hale.    She's an African-American woman born in Detroit, who was elected mayor of the Big Island in 1960 and still represents the Puna District of the Big Island in the legislature of Hawaii at 83 years old today.

The fact is the original Royal Hawaiian Band had some soul, and undoubtedly those musicians influenced the flow and evolution of music in Hawaii in the 1800's.

What we have now is certainly not a Royal Band.   There is no Monarchy ruling the Hawaiian islands any longer.   What we have in place in Honolulu also demonstrates a "colonial" or colonized Eurocentric view of Hawaiian Music, which ironically excludes and ignores the African-American musicians who originated the Royal Hawaiian Band reality and concept in the first place, the black musicians in Hawaii.   Black musicians have been here and performing and having an influence on the music scene in the islands for about 200 years.   Certainly since before 1834.

Not only should the City of Honolulu Municipal band follow State and Federal

law and not discriminate in it's employment practices, it should reflect honestly the totality of the diversity of the musical professional in the Oahu Community, which does include black musicians playing every type of music.

The City of Honolulu Municipal band cannot be an Authentic ROYAL HAWAIIAN BAND, if it is not true to the vision of it's founder King Kamehameha III and include some black musicians to add their soul spice to the musical mix.

Aaron Mahi had his run operating the City and County of Honolulu Band for 22 years. And during that whole time he could not find, he could not persuade he could not work with any other Hawaiian musicians he found competent to join his Royal Hawaiian Band. That certainly should tell one something about his viewpoint of Hawaiian music.

It is time of a newer more open, more diverse and international true Honolulu Community representative vision for the City and County of Honolulu band, which reflects the true composition and population of the City and County of Honolulu today. Which ironically encompassing returning to the original view of the soulful, and international modern band recruited by King Kamehameha III back in 1934 and 1845.

While in a Title VII action, the burden of persuasion remains at all times on the Plaintiff. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); St. Mary's Honor Center v. Hicks, 113 S. Ct. 2742, 2747 (1993). The Plaintiff must prove, by only a preponderance of the evidence, that the legitimate reason offered for the termination is a pretext for racial discrimination. EEOC v. St. Joseph Paper Co., 557 F. Supp. 435, 440 (W.D. Tenn. 1983). The standard is not beyond a

reasonable doubt.

In this case, Plaintiff presented numerous witnesses and overwhelming evidence that 1) Plaintiff was an experienced and competent bassoon musician. 2) That Plaintiff was the only qualified available candidate. 3) That Plaintiff was not afforded many of the advantages Chris Ventura was given in terms of practice time with the band and being given the sheet music to practice at home. Major advantages, when the applicants were supposed to be playing the music by "sight".

The audio tape shows the Defendants exaggerated of just plain lied when the criticized Plaintiff's playing, saying he leaked air and was more nervous than the other applicants. None of which, they even admitted, could not be heard on the tape.

Hence, there is no legally sufficient basis for the jury to find for the Defendants on the issue of Plaintiff's musical ability at the audition, and therefore the court should reverse the finding of the jury and rule for the Plaintiff Matthew Harrell on the issue of whether he was discriminated against in the application and selection process for employment with the City and County of Honolulu municipal band called the Royal Hawaiian Band in the fall of 2000, when he was denied an opportunity for employment, when though the other two applicants turned down the job.

## ILLEGAL RETALIATION

Retaliatory discrimination is defined in 42 U.S.C. 2000e3(a), which states in part:

> "It shall be unlawful employment practice for an employer to discriminate against any of his employees ... because he had opposed a practice made unlawful by this subchapter ..." The clause herein is referred to as the "opposition clause." Silias v. City Demonstration

Agency, 585 F.2d 692, 694 (9th Cir. 1978). According to McDonnell v. Douglas, supra, at 796, (dictum):

Section 704(a) of Title VII, "forbids discrimination against ... employees for attempting to protest or correct allegedly discriminatory conditions of employment."

Therefore, the court should also reverse the jury's finding on the Retaliation Cause of Action, because it was clear from the evidence of Robert Larm's testimony and Plaintiff and Mr. Barrett's that the Defendants refused to call Plaintiff for part-time work, even when he was available on the week-ends, when he did not have classes, after the Plaintiff filed his administrative civil rights complaints. And because of that the Defendants did not call him for further work.

Given the evidence of decades of denial of employment to black musicians in the City of Honolulu municipal band, the testimony of Paul Barrett, the Plaintiff and even the Defendants, no reasonable jury could have concluded that Plaintiff was not a victim of racial discrimination when he was denied both full and part-time employment with the City band in 2000 and subsequently.

This 12th day of February 2006.

_____
ANDRE' S. WOOTEN
Attorney For Plaintiff
MATTHEW HARRELL

ANDRE S. WOOTEN    3887
Attorney at Law
Century Square, Suite 1909
1188 Bishop Street
Honolulu, HI  96813
Phone:  (808) 545-4165

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the Foregoing was duly served upon the following on  February 14, 2006    by:

( ) Delivering same, postage prepaid, addressed to:

(X) Delivering to:

TO:  The Office of the Corporation Counsel
     David Arakawa, Esq.
     Moana Yost, Esq. Deputy
     Derrick Miyashiro, Esq. Deputy
     Honolulu Hale
     530 South King Street
     Honolulu, Hawaii  96813

     Attorneys for Defendants

_____
ANDRE' S. WOOTEN