CARRIE K.S. OKINAGA, 5958
Corporation Counsel
MOANA A. YOST, 7738
DEREK T. MAYESHIRO, 6858
JANE KWAN, 7976
Deputies Corporation Counsel
City and County of Honolulu
530 South King Street, Room 110
Honolulu, Hawaii  96813
Telephone:  (808) 523-4065/523-4890/523-4657
Facsimile:  (808) 523-4583
e-mail:  myost@honolulu.gov/dmayeshiro@honolulu.gov/jkwan@honolulu.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MATTHEW HARRELL,<br><br>Plaintiff,<br><br>vs.<br><br>CITY AND COUNTY OF HONOLULU, A Municipal corporation, the Royal Hawaiian Band, Aaron Mahi, Sr. Director, Robert Larm, Sanford Masada.<br><br>Defendants.<br>_____<br>MATTHEW HARRELL,<br><br>Plaintiff,<br><br>vs.<br><br>CITY AND COUNTY OF HONOLULU, A Municipal corporation, the Royal Hawaiian Band, A Dept. of the City of Honolulu; Aaron Mahi, Sr. Director,<br><br>Defendants. | Civil No.  01-00555 MEA-KSC<br>Civil No.  02-00223 MEA-KSC<br>[Cases Consolidated]<br><br>CITY DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF MATTHEW HARRELL'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR NEW TRIAL; CERTIFICATE OF SERVICE<br><br>Hearing<br>Date:   April 13, 2006<br>Time:  12:00 p.m.<br>Judge: Honorable Marvin E. Aspen<br><br>Trial:  January 4, 2006 |

CITY DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFF MATTHEW HARRELL'S MOTION FOR JUDGMENT AS A
MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR NEW TRIAL

Come now, Defendants City and County of Honolulu, the Royal Hawaiian Band, Aaron Mahi, Robert Larm, and Sanford Masada (hereinafter "City Defendants"), by and through their undersigned attorneys, hereby file their Memorandum In Opposition To Plaintiff Matthew Harrell's Motion For Judgment As a Matter of Law or In The Alternative, Motion For New Trial (hereinafter "Motion").

Plaintiff's Motion only raised arguments as to his discrimination and retaliation claims. As such, City Defendants' Opposition will only address those legal arguments raised by Plaintiff. The jury verdict on any remaining claims not raised in Plaintiff's Motion is deemed waived.

I.  STATEMENT OF FACTS

On September 20, 2000, the Royal Hawaiian Band held auditions for a permanent, full-time bassoon player. Three individuals applied for the position; Christopher Ventura, Ryan Howe, and Plaintiff Matthew Harrell. The selection process had two components, a live audition and an interview. During the audition portion, each applicant played identical pieces of music and during the interview, each applicant was asked a set of questions.

A selection panel comprised of Aaron Mahi, the Band Master of the Royal Hawaiian Band, Sanford Masada, the Assistant Conductor, and Robert Larm, the

2

Woodwind Section Supervisor, scored each applicant for the audition and the interview.

Thereafter, the applicants were ranked by their overall score. Of the three applicants, Plaintiff was ranked last by the selection panel. The position was offered to the applicant who was ranked highest. When he declined the position for financial reasons, it was offered to the next highest ranked applicant, but he also declined the position for personal reasons. After the first two declined the position, Plaintiff was not offered the position.

In this lawsuit, Plaintiff alleges that the City and County of Honolulu and the three selection panel members violated racial discrimination laws, and that the City and County of Honolulu and Aaron Mahi violated retaliation laws. *See* Stipulated Statement of the Case filed January 3, 2006.

The jury trial of this case was held from January 4, 2006 through January 11, 2006. On January 12, 2006, the jury rendered its verdict in favor of all Defendants and against Plaintiff.

II.   LEGAL STANDARD:

    A.   Motion for Judgment as a Matter of Law

"[I]n entertaining a motion for judgment as a matter of law . . . the court must draw all reasonable inferences in favor of the non-moving party, and it may not make credibility determinations or weight the evidence." *Johnson v. Paradise Valley Unified School District*, 251 F.3d 1222, 1227 (9th Cir. 2001). In fact, "although the

3

court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *See Settlegoode v. Portland Public Schools*, 371 F.3d 503, 510 (9th Cir. 2004) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 2110 (2000)).  Further, the Court "may not substitute its view of the evidence for that of the jury." *See id.* "A district court may set aside a jury verdict and grant judgment as a matter of law only if under the governing law there can be but one reasonable conclusion as to the verdict." *See id.*

"Another way to formulate this standard is that the verdict of the jury must be upheld unless there is no 'substantial evidence' to support the jury's verdict." *Southern Union Company v. Southwest Gas Corporation*, 281 F. Supp. 2d 117, 1127 (D. Ariz. 2003).  "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Funai v. R.L. Brownlee,* 369 F. Supp. 2d 1222, 1232 (D. Haw. 2004) (*citing* <u>Gilbrook v. City of Westminister</u>, 177 F.3d 839, 856 (9th Cir. 1999)).

    B.    <u>Motion for New Trial</u>

The court's ruling on an alternative motion for a new trial involves the exercise of some discretion.  However, "a stringent standard applies when the motion is based on insufficiency of the evidence." *Venegas v. Wagner,* 831 F.2d 1514, 1519 (9th Cir. 1987).  The standard for finding insufficient evidence

4

warranting a new trial remains high. *See Wilhelm v. Associated Container Transportation (Australia) Ltd.,* 648 F.2d 1197, 1198 (9th Cir. 1981). "While the trial court may weigh the evidence and credibility of the witnesses, the court is not justified in granting a new trial merely because it might have come to a different result from that reached by the jury." *Funai*, 369 F.Supp.2d at 1238-39. "A motion will be granted on this ground only if the verdict is against the great weight of the evidence, or it is quite clear that the jury has reached a seriously erroneous result." *E.E.O.C. v. Pape Lift, Inc*. 115 F.3d 676, 680 (9th Cir. 1997).

III.    DISCUSSION

    A.    <u>Plaintiff's Motion For Judgment as a Matter of Law must be denied.</u>

In deciding a post-trial Rule 50 Motion For Judgment as a Matter of Law, the Court may not determine the credibility of the witnesses nor weigh the evidence. *See Johnson*, 251 F.3d at 1227. "For Rule 50 purposes, this Court need only decide whether there was sufficient evidence to support the verdict." *Funai*, 369 F.Supp.2d at 1238-39.

In order to succeed on his discrimination claim, Plaintiff must put forth a prima facie case:

> (i) that Plaintiff belongs to a racial minority; (ii) that Plaintiff applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Only after Plaintiff has put forth a prima facie case, the burden then shifts to the Defendants "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *See id.* Should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *See id.*

In order to succeed on his retaliation claim, Plaintiff must put forth a prima facie case:

> (i) that Plaintiff engaged in protected activity; (ii) that Defendants took adverse employment action against him; and (iii) that there is a causal connection between the protected activity engaged in by Plaintiff and the subsequent action taken by Defendants.

In addition, in order for liability to attach to the City, Plaintiff must prove that his civil rights were violated as the result of an official "policy or custom." *See Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978). The showing is two-fold. First, Plaintiff must identify a municipal 'policy' or a 'custom' that caused his injury. *See id.* Second, the disputed "policy" or "custom" must "be the cause and moving force behind the deprivation of constitutional rights." *See id.*

Applying the sufficiency of the evidence standard, there was sufficient evidence presented to the jury upon which the jury could find that no discrimination or retaliation had occurred.

### 1. *Testimony of Defendant Aaron Mahi*

At trial, Defendant Aaron Mahi (hereinafter "Mahi"), former director of the Royal Hawaiian Band (hereinafter "Band"), was questioned at length regarding his reasons for not offering the solo bassoonist position to Plaintiff. Mahi explained his scoring and comments of Plaintiff's musical audition and interview. Mahi's scoring sheets of the musical audition as well as the interview were submitted into evidence.

For the musical audition, Mahi explained the importance of communication, verbal and nonverbal, between the conductor and the soloist. The soloist needs to maintain eye contact with the conductor especially in negotiating tempo, and before the starting or stopping of the solo feature. It is for that reason that the musical auditions cannot be screened. Mahi testified that a soloist needs to "take the ball and run." However, Plaintiff had an "air of nervousness" and "problem with conviction," which ultimately affected his overall sound and his ability to communicate with the conductor. Mahi also found Plaintiff lacking in "rudimentary" playing skills whereby Mahi had to assist Plaintiff in just "getting to first base."

Mahi testified that the solo bassoonist position remained open after Plaintiff's rejection due to budgetary restraints. There were other unfilled positions in the Band also due to budgetary restraints. The jury also heard testimony of the various events in which Mahi participated to promote racial diversity in the community. Therefore, without assessing the credibility of the witness, Mahi articulated legitimate and nondiscriminatory reasons why Plaintiff was not selected.

With regard to the retaliation claim, Mahi stated that another bassoon player, Phil Gottling, was called most frequently for on-call or part time work even prior to Plaintiff's filing of a civil rights complaint against the Defendants. It was within the Bandmaster's discretion to have the Band perform without a bassoonist. It was within the discretion of the woodwind supervisor to select an on-call bassoonist for a particular performance. Also, there is no guarantee that once an individual is placed on the on-call list that he or she will be asked to play. Therefore, there was sufficient evidence for the jury to find that Plaintiff suffered no adverse employment action, or that there was no causal connection between any adverse employment action and Plaintiff's participation in a protected activity.

### 2.   *Testimony of Defendant Robert Larm*

Defendant Robert Larm (hereinafter "Larm") testified that the solo bassoonist audition in which Plaintiff participated was Larm's first time as a judge of a musical audition with the Band. Because no one had explained the scoring sheet to him,

8

unlike the other panelists, Larm had used an "ABC" grading scale (i.e. 90-100 is an "A," 80-89 is a "B," etc.) rather than the numerical and descriptive scale shown on the face of the scoring sheet.  However, regardless of the scores given, Larm found flaws with Plaintiff's performance at the musical audition.  Larm's comments on Plaintiff's performance include "leaking air," "buzzing sound," "nervousness," and "overblowing."  Specifically, Larm wrote "relax, don't beat on yourself" on Plaintiff's scoring sheet.  Larm opined Plaintiff's nervousness was attributed to performance anxiety.

      Moreover, Larm testified he had no authority to offer the solo bassoonist position to Plaintiff, as the authority to hire lies with the Bandmaster.  Larm's scoring sheets of the musical audition as well as the interview were submitted into evidence.  Therefore, without assessing the credibility of the witness, Larm articulated legitimate and nondiscriminatory reasons why Plaintiff was not selected.

      With regard to the retaliation claim, Larm testified as to a hierarchy of the bassoonists on the on-call list.  Plaintiff was ranked last on the on-call list even prior to his filing of a civil rights complaint.  Larm testified about a letter the Band received from Plaintiff whereby Plaintiff stated he would only play with the Band as a substitute bassoonist if he were given rehearsal time and pay with the Band.  However, Larm explained that on-call work is "last minute in nature" and substitute players do not always have the luxury of rehearsal time with the Band.  Also,

Plaintiff had declined an invitation for on-call work citing his full time school schedule as an excuse. Therefore, there was sufficient evidence for the jury to find that Plaintiff suffered no adverse employment action, or that there was no causal connection between any adverse employment action and Plaintiff's participation in a protected activity.

### 3.     *Testimony of Defendant Sanford Masada*

At trial, Defendant Sanford Masada (hereinafter "Masada") was questioned at length regarding his relationship with applicant Christopher Ventura (hereinafter "Ventura") while playing together at the National Guard Band. However, Masada testified he does not socialize with Ventura outside of work, but only maintains a professional relationship with Ventura. Masada testified that his professional relationship with Ventura had no bearing on his judging of Ventura's musical audition or interview. Masada also noted his observation of Plaintiff's nervousness at the audition. Masada's specific comments include "air leakage," "pitch wavering" and "need for endurance." Masada disclaimed race as a factor in his rating of Plaintiff.

Moreover, Masada testified he had no authority to offer the solo bassoonist position to Plaintiff, as the authority to hire lies with the Bandmaster. Masada's scoring sheets of the musical audition as well as the interview were submitted into evidence. Therefore, without assessing the credibility of the witness, Masada

articulated legitimate and nondiscriminatory reasons why Plaintiff was not selected.

With regard to the retaliation claim, Masada clearly stated he had no authority to hire on-call bassoonists. It was within the discretion of the woodwind supervisor, Robert Larm, to select an on-call bassoonist for a particular performance. Therefore, there was sufficient evidence for the jury to find that Plaintiff suffered no adverse employment action, or that there was no causal connection between any adverse employment action and Plaintiff's participation in a protective activity.

### 4.     *Testimony of Assistant Administrator Wayne Oshima*

Wayne Oshima (hereinafter "Oshima") is the Assistant Administrator of the Royal Hawaiian Band. Oshima oversaw the selection process, including the logistics at the audition site and coordinating with applicants. Oshima was tasked with tallying the scoring sheets. Oshima testified, although the applicants were scheduled to audition at different times, all three applicants were offered the same warm up room. None of the applicants received the sight-reading pieces prior to the audition.

Further, Oshima affirmed that Plaintiff remained on the on-call list to the present. Oshima also affirmed that there is no guarantee that once an individual is placed on the on-call list that he or she will be asked to play. However, the Band received a letter from Plaintiff stating he is uncomfortable playing with the Band

after having filed a civil rights complaint. Oshima has no knowledge of whether Plaintiff was offered part-time work after his audition.

### 5. *Testimony of Plaintiff's Expert Paul Barrett*

Plaintiff's own expert, Paul Barrett (hereinafter "Barrett"), testified he would rank the applicants in the same order as the panelists – Christopher Ventura best, Ryan Howe second, and Plaintiff third. Barrett also commented generally on Plaintiff's nervousness. Barrett used a "U" curve as illustration – on one side of the "U" is caring too much, and on the other side of the "U" is caring too little. Barrett attributed Plaintiff's nervousness at the audition to Plaintiff caring too much. Barrett conceded Plaintiff's reed and nerves affected his performance. Barrett echoed Mahi's expectations of a soloist. A soloist must lead. One purpose of the audition is to show how a soloist can lead.

Barrett stated he had known Plaintiff for over twenty years. He considers them to be good friends. Barrett admitted to have approached Mahi and Larm on behalf of Plaintiff prior to the audition. Barrett's bias and prejudice in favor of Plaintiff was clearly stated in his expert report. Barrett's report was submitted into evidence.

### 6. *Audio Recording of the Subject Audition*

Against the objection of the defense, Plaintiff played all three original audio recordings of the subject audition at trial. However, during a Court recess, Plaintiff

damaged one of the original tapes when the tape got caught in the boom box. Over the defense's objection, once again, the tapes were played for the jury.

In sum, without determining the credibility of the witnesses or weighing the evidence, there was sufficient evidence presented to the jury upon which the jury could find that no discrimination or retaliation had occurred. This Court must disregard all evidence favorable to the moving party that the jury is not required to believe. *See Settlegoode*, 371 F.3d at 510.

Plaintiff failed to elicit testimony from the employer regarding any policy or custom of discrimination that could render the City individually liable for discrimination. Each individual Defendant articulated legitimate and nondiscriminatory reasons why Plaintiff was not selected. Further, there was sufficient evidence for the jury to find that Plaintiff suffered no adverse employment action, or that there was no causal connection between any adverse employment action and Plaintiff's participation in a protective activity because there is no guarantee that once an individual is placed on the on-call list that he or she will be asked to play. Therefore, Plaintiff's Motion for Judgment as a Matter of Law must be DENIED.

    B.    <u>Plaintiff's Motion For a New Trial must be denied.</u>

Rule 59(a) of the Federal Rules of Civil Procedure allows for a new trial and states in pertinent part:

> **RULE 59. NEW TRIALS; AMENDMENT OF JUDGMENTS**
>
> **(a) Grounds.** A new trial may be granted to all or any of the parties and on all or part of the issues (1) in any action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States;…
> * * *

A new trial is warranted when the verdict is against the clear weight of the evidence. *Funai*, 369 F.Supp.2d at 1239. Although the Court has discretion to grant a new trial, a stringent standard applies when the motion is based on insufficiency of the evidence. *See Kehr,* 736 F.2d at 1286; *Venegas,* 831 F.2d at 1519. The standard for finding insufficient evidence warranting a new trial remains high. *See Wilhelm,* 648 F.2d at 1198.

While the trial court may weigh the evidence and credibility of the witnesses, the court is not justified in granting a new trial merely because it might have come to a different result from that reached by the jury." *Funai*, 369 F.Supp.2d at 1238-39. This motion can be granted <u>only if</u> the verdict is against the great weight of the evidence, or it is quite clear that the jury has reached a seriously erroneous result". *See Pape Lift, Inc.***,** 115 F.3d at 680 (emphasis added).

Applying the applicable standard, the jury verdict was <u>not</u> against the great weight of the evidence. As discussed above, there was sufficient evidence presented to the jury upon which the jury could find that no discrimination or retaliation had occurred. Clearly, the jury's determinations on the credibility of the

witnesses and the weight of the evidence bared on the trial's final result. However, it cannot be said that the jury verdict was against the great weight of the evidence or that the jury has reached a seriously erroneous result merely because Plaintiff argued at trial, and again in this Motion, otherwise. Therefore, Plaintiff's Motion for a New Trial must be DENIED.

IV.   CONCLUSION

In light of the foregoing, City Defendants respectfully request that Plaintiff Matthew Harrell's Motion For Judgment as a Matter of Law or in the Alternative For a New Trial be DENIED.

DATED:  Honolulu, Hawaii, March 6, 2006.

CARRIE K.S. OKINAGA
Corporation Counsel


By  /s/ Jane Kwan
    DEREK T. MAYESHIRO
    MOANA A. YOST
    JANE KWAN
    Deputies Corporation Counsel
    Attorneys for Defendants