IN THE UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

| | |
|---|---|
| MATTHEW HARRELL<br><br>    Plaintiff,<br><br>    vs.<br><br>CITY AND COUNTY OF HONOLULU, a Municipal Corporation, ROYAL HAWAIIAN BAND, AARON MAHI, Senior Director, ROBERT LARM, and SANFORD MASADA,<br><br>    Defendants.<br>_____<br><br>MATTHEW HARRELL<br><br>    Plaintiff,<br><br>    vs.<br><br>CITY AND COUNTY OF HONOLULU, a Municipal Corporation, ROYAL HAWAIIAN BAND, a Department of the City of Honolulu, and AARON MAHI, Senior Director of the Royal Hawaiian Band<br><br>    Defendants. | CV No. 01-00555-MEA-KSC<br>CV No. 02-00223-MEA-KSC<br>[Cases Consolidated] |

**ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR NEW TRIAL**

MARVIN E. ASPEN, District Judge:

    Immediately following an adverse jury verdict, Plaintiff Matthew Harrell renewed his motion for a mistrial based on the alleged lack of African-American jurors in the venire (addressed in a separate order) and orally moved for judgment as a matter of law. In his February

12, 2006 supporting memorandum, Harrell seeks judgment as a matter of law and a new trial under Federal Rules of Civil Procedure 50 and 59 based on insufficiency of the evidence. Defendants City and County of Honolulu, the Royal Hawaiian Band, Aaron Mahi, Sr., Robert Larm and Sanford Masada (collectively the "City Defendants") oppose Harrell's motions on their merits. As discussed below, we deny both of Harrell's motions.

## BACKGROUND

A.   *Procedural Background*[1]

On January 4, 2006, we began the trial of Harrell's discrimination and retaliation lawsuit against the City Defendants based on their failure to hire him as a solo bassoonist for the Royal Hawaiian Band ("Band"). When Harrell completed presentation of his case on January 10, the City Defendants moved for judgment as a matter of law. (Jan. 10, 2006 Trial Tr. at 75-78.) At the close of all the evidence the following day, the City Defendants renewed their motion. (Jan. 11, 2006 Trial Tr. at 15.) Harrell did not move for judgment as a matter of law after the City Defendants' evidence, or at the close of all evidence. Instead, Harrell renewed his request for a mistrial and moved for judgment as a matter of law following the jury's verdict in favor of the City Defendants on all counts. (Jan. 12, 2006 Trial Tr. at 5.) On February 12, 2006, and pursuant to the Court's briefing schedule, Harrell filed a memorandum in support of his motion for judgment as a matter of law. At that time he added, in the alternative, a motion for a new trial under Federal Rule of Civil Procedure 59. Final judgment was entered in favor of the City Defendants on March 13, 2006.

---

[1] In lieu of including a detailed description of the trial proceedings, we will simply discuss additional facts as needed below.

B.   *Applicable Legal Background*

Before addressing Harrell's motions, we review the legal standards governing his discrimination and retaliation claims. The familiar standards from *McDonnell Douglas Corp. v. Green* govern Harrell's race discrimination claim. 411 U.S. 792, 802-803, 93 S.Ct. 1817, 1824-1825 (1973). To make out a *prima facie* case under that framework, a Title VII plaintiff must show:

> (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*Id.* at 802. If the plaintiff establishes a *prima facie* case, a rebuttable presumption arises that the employer engaged in unlawful discrimination. *Dominiguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005).

"[T]he burden of production – but not persuasion – then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *McDonnell Douglas Corp.*, 411 U.S. at 802. If the employer does so, the plaintiff must prove that the employer's stated reason is pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proferred explanation is unworthy of credence." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (internal quotation omitted); *Dominiguez-Curry*, 424 F.3d at 1037. Should the plaintiff show pretext, the *McDonnell Douglas* framework disappears and "the sole remaining issues [i]s discrimination *vel non*." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142-143, 120 S.Ct. 2097, 2106 (2000); *Villiarimo*, 281 F.3d at 1062.

3

To establish a *prima facie* case for his retaliation claim, Harrell was required to show that: (1) he engaged in protected activity; (2) he "suffered an adverse employment action;" and (3) a "causal link" exists between the protected activity and the employment action. *Funai v. Brownlee*, 369 F. Supp. 2d 1222, 1226 (D. Haw. 2004). The burden-shifting *McDonnell Douglas* framework similarly applies to a retaliation claim, and, as with the discrimination analysis, the plaintiff retains the ultimate burden of persuasion. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 516-517, 113 S.Ct. 2742, 2752 (1993); *Funai*, 369 F. Supp. 2d at 1226. On the whole, "[i]t is not enough . . . to *dis*believe the employer; the factfinder must *believe* plaintiff's explanation of intentional discrimination [and retaliation]." *St. Mary's Honor Ctr.*, 509 U.S. at 519.

With respect to his claims against the City Defendants in their official capacities, the City and County of Honolulu could be liable only if Harrell proved that his civil rights were violated pursuant to an official policy or custom. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105-3106 (1985); *Monell v. Dep't Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037 (1978); *see also Brass v. County of Los Angeles*, 328 F.3d 1192, 1198 (9th Cir. 2003).

## ANALYSIS

A.   *Motion for Judgment as a Matter of Law*

Pursuant to Rule 50(a), a party may move for judgment as a matter of law (or directed verdict) "after the opposing party has been fully heard and *prior* to the submission of the case to the jury." *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003) (emphasis added); Fed. R. Civ. P. 50(a)(2). More specifically, "a motion for a directed verdict *at the close of all the evidence* is a prerequisite for a [Rule 50] post-trial motion." *Herrington v. County of Sonoma*,

4

834 F.2d 1488, 1500 (9th Cir. 1988) (emphasis in original); *see Farley Transp. Co. v. Santa Fe Trail Transp. Co.*, 786 F.2d 1342, 1346 (9th Cir. 1986). The Ninth Circuit strictly observes this requirement, and failure to comply generally precludes post-trial relief. *Janes v. Wal-Mart Stores, Inc.*, 279 F.3d 883, 886-887 (9th Cir. 2002); *Patel v. Penman*, 103 F.3d 868, 878 (9th Cir. 1996). Failure to move for directed verdict at the close of all the evidence may be excused only in extraordinary circumstances, where: (1) an earlier Rule 50 motion remains under advisement; (2) an inartful request was timely made and sufficiently approximates a motion for judgment as a matter of law; or (3) "there is such plain error apparent on the face of the record that failure to review 'would result in a manifest miscarriage of justice.'" *Herrington*, 834 F.2d at 1500 & n.11 (*quoting Williams v. Hughes Helicopters, Inc.*, 806 F.2d 1387, 1392 (9th Cir. 1986)); *Patel*, 103 F.3d at 878; *Farley Transp. Co.*, 786 F.2d at 1346-1347.

Although Harrell moved for a judgment as a matter of law *after* the jury verdict was announced, he failed to do so during the trial. Unlike the City Defendants, Harrell did not submit any motion for directed verdict at the close of his opponents' evidence, or at the close of all the evidence. Because he neglected to file a Rule 50 motion prior to submission of the case to the jury, he cannot advance a post-trial motion challenging the sufficiency of the evidence. Fed. R. Civ. P. 50(a)(2), (b); *Herrington*, 834 F.2d at 1500; *Farley Transp. Co.*, 786 F.2d at 1345-1346.

Harrell has not articulated any excuse for his failure to comply with Rule 50, nor do any of the narrow exceptions apply. While he might personally believe that the verdict constitutes a miscarriage of justice, we cannot agree. We find no plain error in the trial record remotely suggesting any injustice. Even if we could identify plain error warranting further consideration, our review would be "limited to whether there was *any* evidence to support to the jury's verdict,

irrespective of its sufficiency." *Patel*, 103 F.3d at 878 (emphasis added) (internal quotations omitted); *Herrington*, 834 F.2d at 1500-1501. In this case, the City Defendants presented evidence at trial that supports the jury's verdict on the discrimination and retaliation claims. For example, several witnesses testified that Harrell was excessively nervous during the audition and that he had problems with his bassoon reed not experienced by other candidates. These witnesses – including Harrell's own expert, Paul Barrett – identified numerous flaws with his performance, such as air leakage, pitch wavering, lack of endurance and difficulty coordinating with the conductor. Harrell was ranked last of the three applicants for the permanent bassoon position and had been ranked last of potential on-call bassoonists prior to his discrimination complaint. As this (and other) evidence exists to support the verdict, Harrell would not be entitled to judgment as a matter of law, even if plain error required us to consider the question. Because Harrell failed to move for directed verdict at the close of evidence and cannot avail himself of the relevant exceptions, we deny his motion for judgment as a matter of law.

B.     *Motion for a New Trial*

Although the court must exercise some discretion in considering a Rule 59 motion for a new trial, "a stringent standard applies when the motion is based on insufficiency of the evidence," as in this case. *Venegas v. Wagner*, 831 F.2d 1514, 1519 (9th Cir. 1987); *Digidyne Corp. v. Data Gen'l Corp.*, 734 F.2d 1336, 1347 (9th Cir. 1984); *Funai v. Brownlee*, 369 F. Supp. 2d 1222, 1238-1239 (D. Haw. 2004). A motion for a new trial on such grounds may be granted: (1) where the verdict is contrary to the "clear weight of the evidence;" (2) where evidence demonstrates that "the jury has reached a seriously erroneous result;" or (3) where it results in a "miscarriage of justice." *Casumpang v. Int'l Longshore & Warehouse Union Local*

*142*, 411 F. Supp. 2d 1201, 1213 (D. Haw. 2005); *Funai*, 369 F. Supp. 2d at 1238-1239; *see also Venegas*, 831 F.2d at 1519; *EEOC v. Pape Lift, Inc.*, 115 F.3d 676, 680 (9th Cir. 1997). "In most cases, the judge should accept the findings of the jury; however, if the judge is left with the definite and firm conviction that a mistake has been committed, he may grant a new trial." *Casumpang*, 411 F. Supp. 2d at 1213. Nonetheless, the court may not grant a new trial simply "because it might have come to a different result from that reached by the jury." *Wilhelm v. Assoc. Container Transp. (Austl.) Ltd.,* 648 F.2d 1197, 1198 (9th Cir. 1981).

  The jury determined that Harrell had not satisfied the burden of proof on his claims against the City Defendants, and we do not find this conclusion to be against the clear weight of the evidence. Weighing all of the evidence and independently assessing the credibility of the witnesses, the jury's verdict "does not leave the Court with a definite or firm conviction that a mistake has been committed." *Casumpang*, 411 F. Supp. 2d at 1215. After establishing a *prima facie* case for discrimination, Harrell alleges that evidence adduced at trial showed that the City Defendants' decision not to hire him as a soloist due to his nervousness was "a clear pre-text." (Pl.'s Mot. at 7.) We cannot agree. Witness testimony, documentary evidence and even the audiotapes of the audition performances sufficiently demonstrated otherwise. While certain witnesses, including Barrett, acknowledged that all musicians have performance anxiety, the audition panelists also testified that Harrell appeared more nervous than the other applicants and that his performance suffered as a result. Barrett stated that Harrell had a performance anxiety problem, that "he cared too much," and that his lack of self-esteem affected his audition. (Jan. 10, 2006 Trial Tr. at 38-39.) The City Defendants thus presented a legitimate, non-discriminatory reason for their decision not to hire Harrell, which he failed to refute.

Harrell also insists that the City Defendants favored one of his competitors, Christopher Ventura, and provided Ventura the sheet music for the sight reading piece prior to the audition. (Pl's Mot. at 6, 13.)  To the contrary, Wayne Oshima testified that the sheet music for only the prepared pieces were offered to the applicants in advance of the audition.  (Jan. 10, 2006 Trial Tr. at 82-83.)  He further clarified that the sight reading pieces were *not* disclosed to the applicants. (*Id.* at 92.)

As to his retaliation claim, Harrell alleges that he was not called for part-time work with the Band after filing his administrative complaint.  He apparently contends that his testimony, along with that of Barrett and of defendant Robert Larm, demonstrated that the City Defendants refused to hire him for part-time work even when he was available to play.  (Pl's Mot. at 14.) However, this testimony neither supports his argument, nor warrants a new trial.  Barrett, for example, did not testify substantively at all about Harrell's part-time engagements.  (Jan. 10, 2006 Trial Tr. at 22-24.)  He had no personal knowledge about the performance in Mililani where the band allegedly performed without a bassoonist and had not contacted Harrell.[2]  (*Id.*)

Moreover, Larm testified that the ranking of musicians on the part-time list was based on ability.  (*Id.* at 99-100.)  Harrell was ranked at the bottom of that list prior to his civil rights complaint and was the bassoonist least frequently called for part-time assignment.  According to Larm, Harrell declined at least one invitation to play due to his school schedule.  Harrell later informed the Band that he was not comfortable playing part-time unless given a chance to practice in advance, which is not always possible given the last-minute nature of on-call work.

---

[2]Based on the information he received from Harrell, Barrett testified that he thought the Mililani concert occurred *before* the audition and thus, before Harrell's administrative complaint. (Jan. 10, 2006 Trial Tr. at 23.)

8

Finally, testimony confirmed that placement on the part-time list was not a guarantee that any particular musician would be called. Considering all of the evidence, the jury committed no error by concluding that the City Defendants did not retaliate against Harrell.

In his motion,[3] Harrell ultimately attacks the credibility of the defense witnesses. He inaccurately contends that the individual defendants "just plain lied when the[y] criticized Plaintiff's playing, saying he leaked air and was more nervous than the other applicants. None of which, they even admitted, could not [sic] be heard on the tape." (Pl's Mot. at 13.) As discussed above, multiple witnesses – including Barrett, Harrell's expert, teacher and personal friend – credibly described his substantial performance anxiety and its likely effects. Moreover, each of the audition panelists testified that they heard the same problems, including buzzing, air leakage and pitch wavering, on the audiotapes that they identified at Harrell's audition. (Jan. 10, 2006 Trial Tr. at 102, 103,116.) The jury apparently felt these witnesses were believable. Indeed, each of the primary witnesses (including Harrell, Barrett and the individual defendants) testified in a consistent, forthcoming and sincere manner. Based on the witnesses' demeanors and testimony, we find no fault with the jury's conclusions.[4]

---

[3] Harrell's motion includes a fair amount of irrelevant information. He spends nearly two pages vaguely describing historical musical connections between Africans, African-Americans and Hawaiians, which have little – if any – bearing on this case.

[4] Because we find that Harrell is not entitled to a new trial, we need not address whether there was sufficient evidence to hold the City and County of Honolulu liable for the acts of the individual defendants.

## CONCLUSION

For the reasons described above, Harrell's motions for judgment as a matter of law and for a new trial are denied. It is so ordered.

　　　　　　　　　　　　　　　　　　　　　MARVIN E. ASPEN
　　　　　　　　　　　　　　　　　　　　　United States District Judge

Dated: 4/20/06