IN THE UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

| | | |
|---|---|---|
| MATTHEW HARRELL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CV No. 01-00555-MEA-KSC |
| | ) | CV No. 02-00223-MEA-KSC |
| CITY AND COUNTY OF HONOLULU, a Municipal Corporation, ROYAL HAWAIIAN BAND, AARON MAHI, Senior Director, ROBERT LARM, and SANFORD MASADA, | ) | [Cases Consolidated] |
| Defendants. | ) | |
| MATTHEW HARRELL | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| CITY AND COUNTY OF HONOLULU, a Municipal Corporation, ROYAL HAWAIIAN BAND, a Department of the City of Honolulu, and AARON MAHI, Senior Director of the Royal Hawaiian Band | ) | |
| Defendants. | ) | |

**ORDER DENYING PLAINTIFF'S MOTION FOR MISTRIAL**

MARVIN E. ASPEN, District Judge:

On January 6, 2006, Plaintiff Matthew Harrell filed an "Objection to Lack of Black Jurors in Jury Panel & Motion for Mistrial," which we denied without prejudice. After an adverse jury verdict, Harrell renewed his motion for mistrial. In his Supplemental Memorandum, Harrell claims that his constitutional right to a trial by a jury of his peers was violated because the jury

pool for his discrimination and retaliation action failed to include any African-Americans. In addition, he claims that the district court's preclusion of active military personnel stationed in Hawaii from potential jury service is unconstitutional and unfair. (Supp. Mem. at 5-10.) Defendants City and County of Honolulu, the Royal Hawaiian Band, Aaron Mahi, Sr., Robert Larm and Sanford Masada (collectively the "City Defendants") counter that Harrell's motion is untimely, unfounded and fails to demonstrate any constitutional violation. As set forth below, we deny Harrell's motion.

## BACKGROUND

On the morning of January 4, 2006, and outside the presence of the jury pool, counsel for Harrell and the City Defendants addressed Harrell's motion requesting the random selection of jurors using the wheel in open court. After we granted that motion, Harrell's counsel observed that none of the potential jurors identified themselves as African-American on their information cards. At that time, Harrell's counsel agreed that no objection would be appropriate until after meeting the jurors. (Jan. 4, 2006 Trial Tr. at 6-7.)

Shortly thereafter, we questioned the sixteen potential jurors whose names were initially drawn from the wheel and allowed counsel several minutes to pose additional voir dire questions. Although counsel for the City Defendants asked follow-up questions, Harrell's counsel declined to do so. (*Id.* at 38-41.) Significantly, he did not object to the constitution of the venire or the potential petit jury, either before or after voir dire. Harrell's counsel also did not object to the City Defendants' exercise of their peremptory challenges. (*Id.* at 44-46.)

At the conclusion of voir dire, eight of the potential jurors were excused, based largely on the parties' peremptory challenges and juror needs. As a result, the selected eight jurors were

sworn and we excused the remaining potential jurors. (*Id.*)

Following a short recess, seven of the eight jurors returned for preliminary instructions. (*Id.* at 46-47.) During the break, the eighth juror apparently realized that he had a scheduling conflict with the trial and requested to be excused. We informed counsel of this development and inquired if they were willing to proceed with a jury of seven. Harrell's counsel acknowledged it was "an unfortunate situation" but stated that Harrell would proceed to trial with the jury of seven members. (*Id.* at 47.) He presented his initial oral motion for mistrial the following morning.

Harrell alleges that the absence of African-Americans in the jury pool violated his equal protection rights as guaranteed by the Fourteenth Amendment.[1] (Supp. Mem. at 1-3, 11-12.) He argues that since African-Americans constitute 2% or 3% of the Hawaiian population, at least 2 or 3 should have appeared in the random jury pool. (*Id.* at 2-3.) He further alleges that the district court's exclusion of military personnel from the potential juror pool prevents approximately 50,000 - 60,000 black men and women from becoming jurors. (*Id.* at 5.)

## ANALYSIS

A.   *Timeliness*

As the City Defendants contend, Harrell's objection to the jury pool is untimely. It is well-established that objections concerning the jury selection process "must occur as soon as possible, preferably before the jury is sworn." *Dias v. Sky Chefs, Inc.*, 948 F.2d 532, 534 (9th

---

[1] Harrell does not claim that the selection of his jury resulted in any violation of the Jury Selection and Service Act ("JSSA"), 28 U.S.C. § 1861 *et seq.* Harrell's failure to raise a JSSA issue prior to voir dire examination precluded any such statutory claim. 28 U.S.C. § 1867(c) (allowing party to move to stay the proceedings only if the party objects "before the voir dire examination begins, or within seven days [of discovering] . . . grounds therefor").

Cir. 1991) (addressing objections raised under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986)); *see also Morning v. Zapata Protein (USA), Inc.*, 128 F.3d 213, 216 (4th Cir. 1997) (holding that "a *Batson* challenge raised after the venire has been excused has been raised too late"). In *Dias*, for example, the defendant employer did not object to the female plaintiff's use of peremptory challenges to eliminate males from the jury until "after the excluded jurors had been dismissed, the jury had been sworn, the court had recessed and reconvened, defendant's motions in limine had been presented and argued, and defendant noted several other objections." 948 F.2d at 533. The Ninth Circuit held that this delay resulted in waiver of the challenge. *Id.* at 534.

In this case, and although he admittedly knew from the information cards that the jury pool might not include African-Americans, Harrell neglected to challenge the jury selection process until well after voir dire concluded, after the eight jurors were impaneled and after the remaining venire was dismissed. At no time during the jury selection process did Harrell object to the racial make-up of the jury pool, the potential jurors subjected to voir dire, the peremptory challenges exercised by the City Defendants or the final panel. Moreover, Harrell explicitly *consented* to the jury of seven non-African-American jurors, even after having another opportunity to object upon dismissal of the eighth due to a scheduling conflict. Accordingly, Harrell waived any constitutional challenge to the jury selection process, and his motion must be denied.[2]

---

[2] A circuit split seems to exist as to whether failure to comply with JSSA procedures also waives a party's related constitutional claims. *Compare U.S. v. Young*, 822 F.2d 1234, 1239 (2d Cir. 1987) (no waiver) *with U.S. v. Green*, 742 F.2d 609, 611-612 (11th Cir. 1984) (waiver). We need not speculate how the Ninth Circuit might rule if faced with that ancillary question, as Harrell's claims were waived nonetheless.

B.    *Constitutional Claims*

Even if Harrell had not waived his constitutional claims, he fails to allege a *prima facie* case for violation of either his Fifth[3] or Sixth Amendment rights. We assume that Harrell's reference to *Batson v. Kentucky* in his brief was an oversight, as he concedes that the City Defendants did not utilize peremptory challenges to exclude African-Americans from the jury. (Supp. Mem. at 2-3.) Rather, we construe his motion to allege a violation of his right to a jury selected from a fair cross-section of the community. While such a claim may proceed as either a Sixth Amendment or an equal protection claim, Harrell alleges only a Sixth Amendment violation. (Supp. Mem. at 10.) *See Duren v. Missouri*, 439 U.S. 357, 358, 364, 99 S.Ct. 664, 666, 668 (1979) (Sixth Amendment claim); *Castaneda v. Partida*, 430 U.S. 482, 490, 494, 97 S.Ct. 1272, 1278, 1280 (1977) (equal protection claim). Accordingly, we will analyze his claim under the less demanding Sixth Amendment framework.[4]

As described by the Supreme Court in *Duren*, a party alleging a Sixth Amendment fair cross-section violation must show:

> (1) that the group to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this

---

[3] Although Harrell alleges deprivation of his Fourteenth Amendment equal protection rights, "a claim of discrimination by the federal government implicates the equivalent equal protection guarantee inherent in the Due Process Clause of the Fifth Amendment." *United States v. Rodriguez-Lara*, 421 F.3d 932, 937 n.2 (9th Cir. 2005); *see Bolling v. Sharpe*, 347 U.S. 497, 498-499, 74 S.Ct. 693, 694 (1954).

[4] The *Castaneda* equal protection analysis requires a showing: (1) that the group "is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied;" (2) the degree of underrepresentation, using population comparison statistics; and (3) that the "selection procedure is susceptible of abuse or is not racially neutral." 430 U.S. at 494; *see Rodriguez-Lara*, 421 F.3d at 943.

>underrepresentation is due to systematic exclusion of the group in the jury selection process.

439 U.S. at 364; *see Rodriguez-Lara*, 421 F.3d at 940-943; *United States v. Esquivel*, 88 F.3d 722, 725-727 (9th Cir. 1996).  To satisfy the second prong of the *Duren* test, the movant must provide objective data, typically statistical figures, demonstrating that "the jury pool does not adequately represent the distinctive group in relation to the number of such persons in the community." *Esquivel*, 88 F.3d at 726; *see Rodriguez-Lara*, 421 F.3d at 943 (holding that movant must use total population figures for comparison purposes on a *Duren* claim).  Pursuant to Ninth Circuit precedent, a court must consider the "absolute disparity" of the representativeness of the jury pool, which is the simple mathematical "difference between the percentage of the distinctive group in the community and the percentage of that group in the jury pool." *Rodriguez-Lara*, 421 F.3d at 943 (reiterating use of absolute disparity analysis as opposed to comparative disparity analysis).  The third *Duren* prong requires a showing of systematic, though not necessarily intentional, exclusion of the group from the venire.  *Id.* at 944-945; *United States v. Randolph*, 380 F.3d 1133, 1140-1142 (9th Cir. 2004).

      Harrell fails to satisfy the second and third elements of the *Duren* test.[5]  As the City Defendants observed, we cannot be certain that the venire panel lacked African-Americans. (Mem. in Opp'n at 6.)  Yet assuming for purposes of this motion that the panel contained no African-Americans, and further assuming that Harrell's unsupported 2% or 3% population figure

---

[5] The City Defendants do not contest (nor could they) that African-Americans are a distinctive group within the community (the first element of the *Duren* test).

is accurate, Harrell has established at best a 3% absolute disparity.[6] (Supp. Mem. at 2.) *See Rodriguez-Lara*, 421 F.3d at 943; *Esquivel*, 88 F.3d at 726. In the Ninth Circuit, an absolute disparity of 7.7% or lower is not considered evidence of underrepresentation. *Rodriguez-Lara*, 421 F.3d at 943; *see United States v. Cannady*, 54 F.3d 544, 548 (9th Cir. 1995); *United States v. Suttiswad*, 696 F.2d 645, 649 (9th Cir. 1982); *see also United States v. Sanchez-Lopez*, 879 F.2d 541, 547-549 (9th Cir. 1989). Thus, Harrell cannot establish a *prima facie* case for violation of the fair cross-section requirement.[7]

As to the third *Duren* element, Harrell claims that exemption of military personnel from the jury selection process effectively and systematically excludes African-Americans, who constitute 50% (approximately 60,000 people) of military personnel living in Hawaii. Again, Harrell cites no authority for these figures. Nonetheless, he urges that military personnel should be eligible for jury selection. (Supp. Mem. at 5-8, 10.)

As required by the JSSA, the district court precludes certain individuals – including full-time active military personnel – from jury service. The JSSA unambiguously states that the district court, in devising a plan for the random selection of federal jurors, must "specify that the following persons are barred from jury service on the ground that they are exempt: (A) <u>members</u>

---

[6] We agree with the City Defendants that Harrell's repeated reference to the percentage of African-Americans incarcerated in Hawaiian prisons is irrelevant.

[7] Like the Ninth Circuit in *Rodriguez-Lara*, we observe the obvious shortcoming in exclusively utilizing the absolute disparity analysis. 421 F.3d at 943 n.10. The "necessary implication" of existing precedent "is that if a distinctive group makes up 7.7% or less of the community, then the fair cross-section requirement offers no redress even if that group is *entirely shut out of the jury pool*." *Id.* (emphasis in original). Regardless, because Harrell waived all challenges to his jury pool and fails to establish the third *Duren* element, our reliance on the absolute disparity approach could not have worked to his disadvantage here.

in active service in the Armed Forces of the United States." 28 U.S.C. § 1863(b)(6) (emphasis added).  When evaluating a Louisiana juror qualification law, the Supreme Court observed that such an exemption based on occupational class is permissible so long as the "uninterrupted performance" of that occupation "is critical to the community's welfare." *Taylor v. Louisiana*, 419 U.S. 522, 534, 95 S.Ct. 692, 700 (1975); *see also Rawlins v. Georgia*, 201 U.S. 638, 640, 26 S.Ct. 560, 561 (1906).  Likewise – and in rejecting an argument similar to Harrell's – the Fifth Circuit explicitly held that "the exclusion of military personnel from [federal] jury service is reasonable and for the good of the community." *Gov't of the Canal Zone v. Scott*, 502 F.2d 566, 568-569 (5th Cir. 1974).  In light of these persuasive authorities and the clarity and purpose of the JSSA's military exemption, we conclude that compliance with the JSSA could not establish the third *Duren* factor.[8]

---

[8]To the extent that Harrell claims that "the exclusion of service[people] . . . deprived him of his right" to a jury comprised of a fair cross-section of the community "because of the divergence in racial composition between the military contingent in [Hawaii] and the civilian population," we (like the *Scott* court) have no evidentiary basis to entertain such an argument. *Scott*, 502 F.2d at 569.  Regardless, assuming *arguendo* that Harrell's statistics are reliable, he would be unable to prove a constitutional violation, *even if* 60,000 African-American military personnel were eligible for jury service.  As Harrell alleges that 30,000 African-American civilians represent 2% of the population (and the U.S. Census Bureau reports it as 1.8% as of 2000), the addition of 60,000 African-Americans into the jury-eligible population would raise the percentage to approximately 6% or 7%.  *See* U.S. Census Bureau, *Hawaii QuickFacts*, *at* http://quickfacts.census.gov/qfd/states/15000.html (last revised Jan. 12, 2006).  Even if none of the 90,000 were called to trial (or the second trial he seeks), he likely could not demonstrate an absolute disparity sufficient to satisfy the second *Duren* prong.

## CONCLUSION

For the reasons described above, Harrell's motion for a mistrial is denied.  It is so ordered.

*[signature: Marvin E. Aspen]*

MARVIN E. ASPEN
United States District Judge

Dated: 4/20/06